# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ROSS, | CASE NO. 1:09-cv-00063-AWI-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS, WITH LEAVE TO FILE AMENDED COMPLAINT |
| v. | |
| A. HEDGEPETH, et al., | (Doc. 1) |
| Defendants. | THIRTY-DAY OBJECTION PERIOD |

**Findings and Recommendations Following Screening of Complaint**

**I.    Screening Requirement**

Plaintiff Keith Ross, a state prisoner proceeding pro se and in forma pauperis, filed this civil action on January 12, 2009, pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000cc-1 (the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")), and 18 U.S.C. § 1962 (Racketeer Influenced and Corrupt Organizations Act ("RICO")).  Plaintiff seeks to impose liability on Kern Valley State Prison Warden A. Hedgpeth; Captain E. Flores; Chief Inmate Appeals Coordinator N. Grannis; Appeals Coordinators B. Gricewhich, C. Pfeiffer, and T. Billings; Receiving and Release Sergeant A. Marta; and Lieutenant D. Lee for violating his rights under the First and Fourteenth Amendments of the United States Constitution, RLUIPA, and RICO.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**II.    Plaintiff's Claims**

    **A.    Summary of Allegations**

Plaintiff is confined at Kern Valley State Prison in Delano, California. On or around October 15, 2007, ten bottles of prayer oil which Plaintiff had ordered from an authorized vendor arrived at the prison. Plaintiff was not informed that his package arrived and on October 23, 2007, he submitted an inmate appeal inquiring about the package. That appeal did not receive any response, but shortly thereafter, Plaintiff was summoned to the chapel by Muslim chaplain Bilal Mustafa, who informed him that his package had arrived.

Chaplain Mustafa opened the package in front of Plaintiff and another inmate, and handed Plaintiff the miswak from the package.[1] Upon finding the prayer oil, Chaplain Mustafa told Plaintiff he had been instructed to send all prayer oil to the security squad for testing to confirm the contents were oil rather than liquid narcotics. After completion of the testing, the oil would be given to Defendant Marta, the receiving and release officer, and returned to Chaplain Mustafa for distribution.

When Plaintiff urged Chaplain Mustafa to let him have the prayer oil, Chaplain Mustafa said he was under investigation because he had been complaining that religious items ordered by inmates kept disappearing from the warehouse. Chaplain Mustafa said that because of his complaints, Muslim inmates were being denied Halaal foods on a daily basis and were being denied their religious celebrations, so he had to follow all the rules set by prison officials.

At some point thereafter, Chaplain Mustafa was escorted off the prison grounds and fired, purportedly for being in possession of contraband unrelated to Plaintiff's religious package. As of November 2008, when Plaintiff filed this action, his package had not been returned and he had not been informed of when he could expect it back.

Plaintiff alleges that the testing requirement was implemented by Defendant Hedgpeth to retaliate against Chaplain Mustafa, and that in 2006 and 2007, the policy allowed Muslim chaplains to pick up religious packages from receiving and release and distribute them to the inmates. This policy was rescinded by Defendant Hedgpeth in retaliation against Chaplain Mustafa. Plaintiff alleges that the prison was also on lock-down during this time, but when the lock-down ended and he inquired about the distribution of religious packages, he was told that because Chaplain Mustafa was on paid administrative leave, there was no Muslim chaplain available to hand out the withheld religious packages. Plaintiff submitted numerous requests for interviews in which he sought the return of his package, but no one ever responded.

On March 26, 2008, Plaintiff submitted a second inmate appeal regarding the return of his religious package, but it was screened out as untimely by Defendants Gricewhich, Pfeiffer, and Billings on April 15, 2008. Plaintiff resubmitted the appeal with a written explanation regarding the

---

[1] Toothbrushes made from miswak trees.

1  timing of the appeal. On May 5, 2008, the appeal was again screened out as untimely, and on June
2  3, 2008, Defendant Grannis rejected the appeal at the Director's Level of review because it had not
3  been reviewed at the second level of appeal.
4     On June 16, 2008, Plaintiff filed a Citizen's Complaint pursuant to section 832.5 of the
5  California Penal Code regarding the events, and he was interviewed by Defendant Flores, who
6  attempted to pacify Plaintiff by telling him that it was not his fault that his appeals received no
7  response or were screened out. However, Defendant Flores told Plaintiff that the institution had up
8  to three years to withhold Plaintiff's religious artifacts while staff investigated Chaplain Mustafa.
9  Plaintiff alleges that because a new Muslim chaplain has not been hired, he has to wait and hope that
10 Chaplain Mustafa will be allowed to return so that he can receive his package.
11    Having met no success after being interviewed by Defendant Flores, Plaintiff submitted his
12 Citizen's Complaint to Governor Schwarzenegger's office. The complaint was forwarded to the
13 High Security and Transitional Housing Division of Adult Institutions in Sacramento by Governor
14 Schwarzenegger's office. (Comp., Ex. F, court record p. 41.) Correctional Lieutenant Lee
15 responded by advising Plaintiff in a letter dated July 9, 2008, that a Citizen's Complaint is intended
16 for non-inmate complaints regarding staff misconduct and that the issues raised by Plaintiff should
17 be addressed via the inmate appeals process. (Id.)
18   **B.   Plaintiff's Claims**
19      **1.   RICO Claim**
20    There is a private right of action for violation of RICO. Canyon County v. Syngenta Seeds,
21 Inc., 519 F.3d 969, 972 (9th Cir. 2008); Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137,
22 1146-47 (9th Cir. 2008). Plaintiff alleges claims for violation of section 1962(c), which "prohibits
23 a person employed by or associated with any enterprise engaged in interstate commerce to conduct
24 or participate in the conduct of the enterprise through a pattern of racketeering activity," Sybersound
25 Records, Inc., 517 F.3d at 1147, and section 1962(d), which prohibits the conspiracy to do so,
26 Canyon County, 519 F.3d at 972. The elements of a substantive RICO claim are (1) conduct (2) of
27 an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to business or
28

property, Sanford v. Memberworks, Inc., 625 F.3d 550, 557 (9th Cir. 2010); Avalos v. Baca, 596 F.3d 583, 593-94 (9th Cir. 2010); Canyon County, 519 F.3d at 975; Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001), with the conspiracy claim being necessarily dependent upon the existence of the substantive RICO violation, Sanford, 625 F.3d at 559.

Among other things, Plaintiff must show at least two acts of racketeering activity, which is conduct indictable under several provisions of Title 18 of the United States Code. Sanford, 625 F.3d at 557; Canyon County, 519 F.3d at 972. Plaintiff alleges that the following predicate acts constitute extortion under California law and mail fraud under federal law: Defendants Gricewhich, Pfeiffer, and Billings' failure to process his October 23, 2007, inmate appeal; Defendant Hedgpeth's enactment of the policy requiring that prayer oil ordered by inmates be inspected and tested prior to distribution to the inmates; Defendants Gricewhich, Pfeiffer, and Billings' decisions to screen out Plaintiff's inmate appeal as untimely on April 15, 2008, and on May 5, 2008; Defendant Grannis's written rejection of his appeal on June 3, 2008; and Defendant Lee's July 9, 2008, response letter to his Citizen's Complaint. (Id., pp. 20-22.)

Extortion is the obtaining of property from another whose consent is induced by the wrongful use of force or fear, or under color of official right, Cal. Penal Code § 518 (West 2010) (quotation marks omitted), and mail fraud "consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails, or causing such a use, in furtherance of a scheme; and (3) specific intent to deceive or defraud," Sanford, 625 F.3d at 557 (citing Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986)). At issue here are the confiscation of Plaintiff's prayer oil bottles pending verification of the contents of the bottles, and Plaintiff's unsuccessful attempts to seek redress via administrative processes. It is the wrongful use of force or fear to compel the victim's consent which establishes extortion, Chan v. Lund, 116 Cal.Rptr.3d 122, 131 (Cal. Ct. App. 2010), and while the confiscation of Plaintiff's religious prayer oil may infringe upon a protected right, Plaintiff's property was not obtained from him through the wrongful use of force or fear and its confiscation does not constitute the crime of extortion.

///

Further, while Plaintiff may disagree with the responses to his inmate appeals and Citizen's Complaint, Defendants did not commit mail fraud. There is no basis for the imposition of liability under RICO. Because the deficiencies are not capable of being cured through amendment, the Court recommends dismissal of Plaintiff's RICO claims with prejudice.

### 2. Free Exercise and RLUIPA Claims

Plaintiff alleges Defendant Hedgpeth's implementation of the policy requiring prayer oil be tested prior to distribution to inmates and Defendant Flores' statement to him that the prison could withhold his prayer oil for up to three years violated his right to exercise his religion protected by First Amendment and RLUIPA.

The protections of the First Amendment's Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by* Shakur, 514 F.3d at 884-85. RLUIPA prohibits prison officials from substantially burdening a prisoner's "'religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means.'" Alvarez v. Hill, 518 F.3d 1152, 1156 (9th Cir. 2009) (quoting Warsoldier v. Woodford, 418 F.3d 989, 997-98 (9th Cir. 2005)).

The confiscation of Plaintiff's prayer oil, which he alleges he requires to practice his religion, provides a basis for the imposition of liability under both the First Amendment and RLUIPA. Plaintiff's allegations are sufficient to state a claim against Defendant Hedgpeth.

However, Defendant Flores' involvement was limited to interviewing Plaintiff following his submission of a Citizen's Complaint. Defendant Flores may be held liable for violating Plaintiff's rights only if he can be linked to the policy, practice, or action that led to the confiscation of Plaintiff's prayer oil, which burdened the practice of his religion. In this situation, Defendant Flores' involvement in attempting to resolve an administrative appeal or complaint regarding a prison condition does not make Flores responsible for that prison condition. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). While Defendant Flores stated that the prison could withhold the oil for

1  up to three years, there is no indication Flores was responsible for that policy or practice. Merely
2  relaying information to Plaintiff in an administrative capacity regarding a policy or practice in
3  existence does not demonstrate that Defendant Flores was personally responsible for burdening the
4  exercise of Plaintiff's religion. Iqbal, 129 S.Ct. at 1948-49.

### 3. Establishment Clause and Equal Protection Claims

Plaintiff alleges Defendant Hedgpeth violated the Establishment Clause of the First Amendment, which "prohibits the enactment of a law or official policy that 'establishes a religion or religious faith, or tends to do so.'" Newdow v. Lefevre, 598 F.3d 638, 643 (9th Cir. 2010) (quoting Lynch v. Donnelly, 465 U.S. 668, 678, 104 S.Ct. 1355 (1984)). The clause applies to official condonement of a particular religion or religious belief, and to official disapproval or hostility towards religion. American Family Ass'n, Inc. v. City and County of San Francisco, 277 F.3d 1114, 1120-21 (9th Cir. 2002) (quotation marks and citations omitted).

Plaintiff claim aries from his contention that Defendant Hedgpeth grants Jewish prisoners a Kosher diet, but denies Muslim inmates a Halaal diet, and fails to give Muslim inmates equal access to the chapel. These allegations do not support the existence of a claim based on official approval or disapproval of a religion. Instead, Plaintiff's allegations are suggestive of a violation of the Equal Protection Clause of the Fourteenth Amendment, which directs that all similarly situated persons be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).

A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Shakur, 514 F.3d at 891 (quoting Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at 891; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee

///

v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part on other grounds* by Shakur, 514 F.3d at 884-85.

Plaintiff's conclusory allegations regarding diet and chapel access fall short of supporting a plausible equal protection claim against Defendant Hedgpeth. Iqbal, 129 S.Ct. at 1949-50. However, the deficiency may be curable and the Court recommends Plaintiff be granted leave to amend the claim. If Plaintiff still wishes to pursue an Establishment Clause claim despite the admonition in this section that his allegations are more suited to an equal protection challenge, he bears the burden of pleading sufficient facts to support such a claim.

### 4. Denial of Access to the Courts Claim

Plaintiff alleges that Defendants Gricewich, Pfeiffer, and Billings' refusal to process his first inmate appeal and their decision to twice screen out his second inmate appeal, and Defendant Grannis's refusal to process his second inmate appeal at the Director's level of appeal constituted denial of access to the courts.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access to the courts is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. To bring a claim, the plaintiff must have suffered an actual injury by being shut out of court. Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 2185-87 (2002); Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.

Plaintiff may not pursue a claim for denial of access to the courts based on the failure of staff to respond to his appeals or based on the rejection of his appeals by staff. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001), and because Plaintiff has not alleged any facts demonstrating that he suffered an actual injury to qualifying litigation, his claim fails as a matter of

law,[2] Christopher, 536 U.S. at 415; Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.  The Court recommends dismissal of the claim without prejudice, but without leave to amend in this action.

### III.     Conclusion and Recommendation

Plaintiff's complaint states cognizable claims for relief against Defendant Hedgpeth for violation of the Free Exercise Clause of the First Amendment and RLUIPA.  However, it does not state any other claims for relief.  The deficiencies in Plaintiff's RICO claim and claim for denial of access to the courts are not curable, and the Court recommends they be dismissed without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  The deficiencies in Plaintiff's other claims may be curable and the Court recommends leave to file an amended complaint be granted, limited to those claims.  If Plaintiff does not wish to amend those claims and is willing to proceed only on his First Amendment and RLUIPA claims against Defendant Hedgpeth, he may do so and should notify the Court of that decision in response to these Findings and Recommendations.

Accordingly, the Court HEREBY RECOMMENDS that:

1.  Plaintiff's RICO claim be dismissed from the action, with prejudice, for failure to state a claim;

2.  Plaintiff's claim for denial of access to the courts be dismissed from the action, without prejudice but without leave to amend;

3.  Plaintiff's free exercise and RLUIPA claims against Defendant Flores, Plaintiff's Establishment Clause claim, and Plaintiff's equal protection claim be dismissed, without prejudice, for failure to state a claim; and

4.  Plaintiff be granted leave to file an amended complaint, limited to curing the deficiencies in his free exercise, RLUIPA, Establishment Clause, and equal protection claims.

---

[2] While it is possible that the dismissal of a qualifying lawsuit for failure exhaust might support a claim for denial of access to the courts if prison officials wrongfully thwarted the process, such a dismissal would first have to occur and in light of the fact that exhaustion may be excused if the process is rendered unavailable, Plaintiff may may not assume that his inability to get his appeals processed will lead to dismissal of a court case.  Sapp v. Kimbrell, 623 F.3d 813, 822-23 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010).

1  These Findings and Recommendations will be submitted to the United States District Judge
2  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30)**
3  **days** after being served with these Findings and Recommendations, Plaintiff may file written
4  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's
5  Findings and Recommendations."  Plaintiff is advised that failure to file objections within the
6  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d
7  1153 (9th Cir. 1991).

11  IT IS SO ORDERED.

12  **Dated:   January 26, 2011**            /s/ Sandra M. Snyder
                                              UNITED STATES MAGISTRATE JUDGE